# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHERYL HANSEL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 16-1181-JWL |
| NANCY A. BERRYHILL,[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for DIB, alleging disability beginning July 4, 2008. (R. 20, 237). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred pursuant to Social Security Ruling (SSR) 02-1p when considering Plaintiff's obesity, erred in weighing the medical opinion of her primary care physician, and failed when assessing residual functional capacity (RFC) to consider adequately the impairments found not severe.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 404.1520(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses each alleged error in the order presented in Plaintiff's Brief.

## II. Consideration of Obesity

Plaintiff claims the ALJ made inconsistent findings relating to the functional effects of her obesity and therefore it is impossible to understand the basis for the RFC assessed. (Pl. Br. 12-13). She argues that SSR 02-1p recognizes the potentially "wide ranging effects of obesity, including pulmonary function, mental health functioning, and fatigue," and that each of these issues is present in this case. Id. at 14. She concludes that "[b]ecause the ALJ failed to provide any analysis about the effect of obesity on these underlying problems, we are unable to determine whether her decision complied with" the SSR. Id. The Commissioner argues that the ALJ adequately considered obesity. She argues that there is no discrepancy such as that alleged by Plaintiff, that the ALJ gave great weight to the opinions of the state agency physicians–thereby accounting for the functional effects of obesity–and that the ALJ repeatedly addressed Plaintiff's obesity in the decision at issue. (Comm'r Br. 5-6). In her Reply Brief, Plaintiff argues that "it is entirely unclear whether the ALJ considered the effects of obesity at step four and five,"

4

and that the court "cannot determine whether the sedentary work capacity [assessed] includes consideration of obesity or not." (Reply 2). She argues that, in any case, the ALJ did not consider the effects of obesity on her Chronic Fatigue Syndrome–which would likely cause her to miss work more than three times a month and would likely cause a need for extra breaks during the workday–and failed to consider obesity's effect on breathing problems wherein she "repeatedly complained of shortness of breath." Id. at 3-4.

As Plaintiff argues, SSR 02-1p, Titles II and XVI: Evaluation of Obesity provides guidance on Social Security Administration (SSA) policy concerning the evaluation of obesity in disability claims, and requires that adjudicators will explain how they reached their conclusion whether obesity caused any physical or mental limitations. West's Soc. Sec. Reporting Serv., Rulings 257 (Supp. 2016). In her step three discussion whether Plaintiff's condition meets or medically equals a Listed impairment, the ALJ noted that she had considered Plaintiff's obesity pursuant to SSR 02-1p. (R. 25). In finding no Listing met or medically equaled, she noted that "the medical evidence does not indicate that the claimant's obesity has resulted in any <u>significant adverse effect</u> on her functional abilities." Id. (emphasis added). When discussing RFC assessment between step three and step four of the evaluation, the ALJ weighed the medical opinions and accorded great weight to the opinions of the state agency physicians and psychologists who prepared the Disability Determination Explanation, "particularly the most recent assessment." (R. 30) (citing Ex. 4A (R. 162-76)).

5

As Plaintiff points out, the state agency physicians found Plaintiff was limited to sedentary level exertion in part "because of severe obesity with a BMI [(body mass index)] of 45.1" (R. 172), has postural limitations "because of chronic knee pain secondary to claimant's obesity and probable DJD [(degenerative joint disease)]," id., and has environmental limitations "because of severe obesity, [and] problems breathing (undiagnosed etiology)." (R. 173). Plaintiff argues that there is a "discrepancy" between these opinions of the state agency physicians and the ALJ's step three finding that obesity has not resulted in any <u>significant adverse effect</u> on Plaintiff's functional abilities, making it impossible to understand the ALJ consideration of obesity. (Pl. Br. 13).

Plaintiff's argument misunderstands the decision. A step three determination is concerned with whether a claimant's condition meets or equals the severity of a Listed impairment. "The listings define impairments that would prevent an adult, regardless of [her] age, education, or work experience, from performing <u>any</u> gainful activity, not just 'substantial gainful activity.'" <u>Sullivan v. Zebley</u>, 493 U.S. 521, 532-33 (1990) (emphasis in original) (citing 20 C.F.R. § 416.925(a) (1989)). At step three, therefore, it is notable that obesity has not resulted in any <u>significant adverse effect</u> on Plaintiff's functional abilities because without such <u>significant adverse effect</u>, Plaintiff's condition cannot meet or equal a Listing. Contrary to Plaintiff's implications, the ALJ did not find that Plaintiff's obesity had <u>no</u> adverse effect on her functional abilities, just no <u>significant</u> adverse effect. As the Commissioner argues, the presence of such effects is confirmed by

6

the fact the ALJ gave great weight to the state agency physicians' opinions which, precisely as Plaintiff argues, were based in large part on the effects of Plaintiff's obesity.

There is no instance in which the ALJ assessed lesser functional limitations than those assessed by the state agency psychologists or physicians. (R. 153-57, 169-73). However, he found postural and environmental limitations <u>greater</u> than those opined by the state agency physicians. He found that Plaintiff can only rarely–rather than occasionally–climb ramps and stairs and can never–rather than occasionally–crawl. According to the state agency physicians, these areas were limited because of obesity, and the ALJ's greater limitations reasonably relate to the same basis. With regard to environmental restrictions, the ALJ found that Plaintiff should additionally avoid concentrated exposure to humidity and wetness. The state agency physicians attributed their environmental limitations in part to breathing problems, and the ALJ's greater limitations reasonably relate to the same basis. It is not error for an ALJ to accord a claimant the benefit of the doubt and assess greater limitations than did the medical sources.

Plaintiff's argument that the ALJ did not consider the effects of obesity in combination with her non-severe impairments including pulmonary function, mental health functioning, and fatigue is also unavailing. Even were the court to assume that the ALJ did not consider the effects of obesity in accordance with SSR 02-1p–as she said she did–Plaintiff has shown no harm resulting from that alleged error because she points to no

7

record evidence demonstrating limitations greater than those assessed by the ALJ and resulting from the effects of obesity in combination with the non-severe impairments.

Plaintiff argues that Dr. McCarty's opinion that she would likely need extra breaks and would miss work more than three times a month is attributable to fatigue resulting from obesity, but Dr. McCarty does not attribute those limitations to this basis. (R. 837-38). Moreover, the ALJ accorded little weight to Dr. McCarty's opinion, and as will be discussed later, the court finds no error in that determination. Plaintiff's reliance on her reports of fatigue or breathing difficulties are likewise unavailing. Fatigue, exhaustion, or breathing difficulties as reported by Plaintiff are symptoms, not functional limitations. The ALJ found Plaintiff's allegations regarding the limiting effects of her symptoms "not entirely credible" (R. 29), and Plaintiff does not allege error in that finding.

Plaintiff has shown no error in the ALJ's consideration of obesity.

**III.  Evaluation of Dr. McCarty's Treating Source Opinion**

Plaintiff claims the ALJ erred in weighing Dr. McCarty's opinion. She argues that discounting the opinion because it was provided after Plaintiff's date last insured is error because Dr. McCarty's treatment record was longitudinal, most of the records were before the date last insured, and there was no indication of improvement or decline after the date last insured. (Pl. Br. 15). She argues that discounting the opinion because Dr. McCarty did not reference specific testing is error because Dr. McCarty indicated she relied on tender trigger points, MRI, X-rays, abnormal labs showing inflamation, and documentation from referrals. Id. Finally, she argues that discounting the opinion

8

because of insufficient clinical or laboratory findings is error because the record shows antalgic gait, weakness in lower extremities, swelling, elevated lab markers for inflammation, and consistent diagnoses of morbid obesity. Id. at 15-16. She concludes that "Dr. McCarty is simply in the best position to determine the level of dysfunction due to Ms. Hansel's impairments as magnified by obesity. Id. at 16.

The Commissioner argues that the ALJ reasonable discounted Dr. McCarty's opinion. She argues that the opinion was properly discounted because it was rendered nine months after Plaintiff's date last insured but was not given as a retrospective opinion. (Comm'r Br. 7-8). She argues that the ALJ correctly discounted the opinion because it was not related to any specific findings, and the matters upon which Dr. McCarty purportedly relied were merely vague, general references. Id. at 8. Finally, she argues that the ALJ properly found that the record evidence does not support the degree of limitations opined by Dr. McCarty. Id. at 8-10.

### A.     Standard for Weighing a Treating Source Opinion

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight she assigned it. Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Watkins, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. § 404.1527(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)). However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in her decision for the weight she ultimately assigns the opinion. If the ALJ rejects the opinion completely, she must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

### B. The ALJ's Findings

As noted previously, the ALJ accorded significant weight to the opinions of the state agency consultant physicians and psychologists. (R. 30). Moreover, the ALJ found that Plaintiff was insured for DIB only through December 31, 2013. (R. 20). And the ALJ considered the treating source opinion of Dr. McCarty, and accorded it little weight. Id. She provided three reasons for discounting Dr. McCarty's opinion. The opinion was rendered after Plaintiff's date last insured "and is therefore not relevant to the current claim." Id. The physician did not relate her opinion to specific testing. And there are insufficient clinical or laboratory findings to support the opinion. Id.

### C. Analysis

Plaintiff does not deny that her date last insured was December 31, 2013 or challenge the assignment of significant weight to the state agency physicians' and psychologists' opinions. And, as the ALJ noted, Dr. McCarty did not provide an opinion regarding Plaintiff's limitations until September 29, 2014–nearly ten months after her date last insured. (R. 838). Moreover, the opinion does not indicate in any way that it is retrospective to the period before Plaintiff's date last insured. It uses the present tense exclusively and does not provide an effective date for the opinion. The court agrees with Plaintiff that a physician's treatment is longitudinal, but her argument breaks down there. Although Plaintiff argues that "the bulk of the records on which the opinion is based are prior to the date" last insured (Pl. Br. 15), the opinion simply does not indicate the records upon which it is based. The ALJ and the court may not assume that Dr. McCarty's opinion, dated September 29, 2014, is based upon all of her treatment records, including

those dated as early as November 2008, which was three years before Plaintiff's amended alleged onset date, December 28, 2011. (R. 112). It was not error to discount Dr. McCarty's opinion because it was formed after Plaintiff's date last insured.

Plaintiff's argument that it was error to discount Dr. McCarty's opinion because it did not rely on specific testing is also unpersuasive. This argument, noting that Dr. McCarty indicated she relied on tender trigger points, MRI, X-rays, abnormal labs showing inflamation, and documentation from referrals, while technically true, is not inconsistent with the ALJ's finding. As Plaintiff's brief suggests, Dr. McCarty stated that her opinion is supported by "tender trigger points, MRI, xrays, referral physicians documentations, abnormal lab showing inflammation [(sic)]." (R. 838). However, as the ALJ found there is nothing in Dr. McCarty's report indicating what the <u>specific</u> tests were, when they were performed, what opinions were supported by which tests or findings, and how the tests lead to the opinions expressed. In fact, she did not even provide citations to where the test results may be found. As the Commissioner points out, the more relevant evidence a medical source cites in support of her opinion and the better an explanation she provides for it, the greater weight it will be given. (Comm'r Br. 8) (citing 20 C.F.R. § 404.1527(c)(3)). The ALJ did not err in relying on this basis to discount Dr. McCarty's opinion.

In a related argument, Plaintiff asserts that contrary to the ALJ's reasons for discounting Dr. McCarty's opinion, the physician did provide sufficient clinical or laboratory findings to support her opinion. She points to records showing antalgic gait,

12

weakness in her lower extremities, swelling in her hands, and very high inflammatory markers. But, as the Commissioner points out, the ALJ's point was that the clinical and laboratory findings do not support the <u>degree</u> of functional limitation opined by Dr. McCarty. (R. 30). Although Plaintiff points to evidence generally supporting a finding of some limitations, neither she nor Dr. McCarty suggest why the cited findings preclude sitting or standing/walking more than two hours in a workday; why she can only rarely lift less than ten pounds, and never more; or why she can never twist, stoop/bend, crouch, or climb stairs, and can only rarely reach, handle, finger, or feel. There is no error here.

Plaintiff also argues that the ALJ erred because she did not consider the regulatory factors of examining relationship, supportability, consistency, specialization, and other factors. (Pl. Br. 16). Contrary to Plaintiff's argument, even the most cursory reading of the decision or the discussion above reveals that the ALJ considered at least the factors of relationship, supportability, and consistency. Moreover, as noted above, the court will not require a factor-by-factor analysis so long as the decision makes clear the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. <u>Oldham</u>, 509 F.3d at 1258. The ALJ has done so here, and more is not required.

### IV. Consideration of Impairments Found Not Severe

In her final argument Plaintiff asserts, rather obliquely, that it is not clear the ALJ considered Plaintiff's non-severe impairments in assessing RFC. Particularly, she argues that the ALJ did not discuss the mild limitations in social functioning and in maintaining concentration, persistence, or pace which were opined by the state agency psychologists,

and she assessed no functional limitations resulting from Plaintiff's fatigue. (Pl. Br. 17). As the court discussed above, Plaintiff has shown no functional limitations resulting from fatigue beyond those assessed by the ALJ. The court will not repeat its analysis here.

With regard to the mental limitations found by the state agency psychologists, and allegedly ignored by the ALJ, the court notes that the state agency psychologists found Plaintiff's mental impairments are not severe (R. 153-54, 169-70) and the ALJ followed suit (R. 25) and accorded great weight to their opinions, particularly the reconsideration opinion. (R. 30) (citing Ex. 4A (R. 162-76)). An impairment is not severe only if it does not have more than a minimal effect on a claimant's ability to do basic work activities. Williams, 844 F.2d at 751. In this light, both the ALJ and the state agency psychologists found that Plaintiff's mild mental limitations have only a minimal effect on her ability to perform basic mental work activities, and Plaintiff does not point to record evidence of functional mental limitations which were not included in the RFC assessed.

Moreover, and most importantly, although Plaintiff implies that the ALJ may not have considered the effects of her non-severe impairments, she does not point to evidence that they were in fact not considered. The ALJ stated the legal standard for her consideration and stated that she "must consider all of the claimant's impairments, including impairments that are not severe." (R. 21) (citing 20 C.F.R. §§ 404.1520(e) and 404.1545, and SSR 96-8p). And, several times in the decision at issue she stated that she had in fact considered all of the evidence. (R. 20, 22, 25, 29). A reviewing court's general practice is to take a lower tribunal at its word when it states it has considered a

matter.  Hackett, 395 F.3d at 1172-73.  Plaintiff has provided no basis to depart from that practice in this case.

She has shown no reversible error in the decision at issue.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 1st day of May 2017, at Kansas City, Kansas.


        s:/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**